IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
Newark Vicinage

| | |
|---|---|
| ELSID ALIAJ,<br><br>   Plaintiff,<br><br>   -against-<br><br>FORT LEE POLICE DEPARTMENT, MATTHEW J. HINTZE, in his official capacity as Chief of FORT LEE POLICE DEPARTMENT, BERGEN COUNTY PROSECUTOR'S OFFICE, and MARK MUSELLA, in his official capacity as Bergen County Prosecutor,<br><br>   Defendants. | Case No. 2:25-cv-17131<br><br>Motion Day: December 1, 2025<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF ELSID ALIAJ'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

Edward Andrew Paltzik, Esq. (N.J. Bar No. 251582017)
Taylor Dykema PLLC
914 E 25th Street
Houston, TX 77009
516-526-0341
edward@taylordykema.com
*Attorneys for Plaintiff Elsid Aliaj*

i

# TABLE OF CONTENTS

I.   Introduction ........................................................................................................... 1

II.  Factual Background ............................................................................................. 1

III. Standard of Review ............................................................................................... 5

IV.  Argument ............................................................................................................... 5

   A.  Plaintiff is Likely to Succeed on the Merits of His Claim ................................... 5

     *i.   The Proper Analytical Framework* ................................................................. 5

     *ii.  Defendants' Conduct Blatantly Violates Heller's Command Against Firearm Bans in the Home* ........................................................................................................... 6

     *iii. There is no Historical Regulation or Case Law that Supports Wholesale Disarmament of a Peaceable and Law-Abiding Firearms Owner Who Resides With Another Individual That Has an Actual or Perceived Mental Health Condition Where the Other Individual Cannot Exercise Control Over the Owner's Firearms* ........................................... 8

     *iv.  Defendants Did Not Follow State Law* ........................................................ 10

   B.  Plaintiff Will Suffer Irreparable Harm ............................................................... 12

   C.  The Remaining Factors Favor Granting A Preliminary Injunction ................... 13

V.   Conclusion ........................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Delaware State Sportsmen's Assoc. et al. v. Delaware Dept. of Safety & Homeland Sec.*,
   No. 23-1633 (3d Cir. 2024) ................................................................................................. 14

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ........................................................................................... 5, 6, 7, 12

*Elrod v. Burns*,
   427 U.S. 347 (1976) .............................................................................................................. 12

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*,
   765 F.3d 205 (3d Cir. 2014) ................................................................................................. 5

*Grace v. District of Columbia*,
   187 F. Supp. 3d 124 (D.D.C. 2016) .................................................................................. 13

*Koons v. Reynolds*,
   649 F. Supp. 3d 14 (D.N.J. 2023) ...................................................................................... 13

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) .............................................................................................................. 5

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
   597 U.S. 1 (2022) ............................................................................................................. 5, 6

*Nat'l Safe Deposit Co. v. Stead*,
   232 U.S. 58 (1914) ................................................................................................................ 8

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................................................ 13

*Rhode v. Becerra*,
   445 F. Supp. 3d 902 (S.D. Cal. 2020) ............................................................................... 13

*U.S. v. Bellinger*,
   284 Fed. App'x 966 (3d. Cir. 2008) .................................................................................... 8

*U.S. v. Booker*,
   436 F.3d 238 (D.C. Cir. 2006) ............................................................................................. 8

*U.S. v. Huet*,
   665 F.3d 588 (3d Cir. 2011) ........................................................................................... 9, 10

*U.S. v. Iafelice*,
    978 F.2d 92 (3d Cir. 1992) ............................................................................................... 8

*U.S. v. Jenkins*,
    90 F.3d 814 (3d Cir. 1996) ............................................................................................... 8

*United States v. Caldwell*,
    760 F.3d 267 (3d Cir. 2014) ........................................................................................... 10

*United States v. Rahimi*,
    602 U.S. 680 (2024) ......................................................................................................... 6

*United States v. Xavier*,
    2 F.3d 1281 (3d Cir. 1993) ............................................................................................... 8

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................................................. 5

**Statutes**

Cal. Penal Code § 25135 ........................................................................................................ 9

N.J. Stat. Ann. § 2A:62A-16 ............................................................................................ 3, 10

N.J. Rev. Stat. § 2C:58-3 ...................................................................................................... 11

N.Y. Penal Law § 265.45 ....................................................................................................... 9

U.S. CONST. amend. II ........................................................................................................... 1

U.S. CONST. amend. XIV, § 1 ................................................................................................ 5

**Other Authorities**

11A Wright & Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2022) ........................ 12

Patrick D. Murphree, *Beat Your Wife, and Lose Your Gun*,
    61 Loy. L. Rev. 753 (2015) .............................................................................................. 9

I. **Introduction**

Plaintiff, Elsid Aliaj ("Plaintiff" or "Aliaj"), submits this Memorandum of Law in Support of his Motion for a Preliminary Injunction. Few principles are more deeply etched in American jurisprudence than the fundamental right to keep and bear arms. The Second Amendment provides that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, *shall not be infringed*." U.S. CONST. amend. II. (emphasis added). However, Defendants Fort Lee Police Department ("FLPD") and Bergen County Prosecutor's Office ("BCPO"), and their respective heads (the individual Defendants sued in their official capacities) confiscated Aliaj's firearms, ammunitions, and accessories from his home, *without a court order*, and continue to retain possession of same, still *without a court order*, notwithstanding the fact that Aliaj is a peaceable and law-abiding citizen not subject to any legal disability or disqualification. This brazen and illegal conduct violates the Second Amendment—*full stop*. Accordingly, Plaintiff is entitled to preliminary injunctive relief, to wit: an order of this Court enjoining Defendants from destroying, selling, transferring, or otherwise disposing of Aliaj's firearms, ammunition, and related accessories; enjoining Defendants from continuing and maintaining their unlawful seizure and ongoing illegal deprivation of Aliaj's firearms, ammunition, and related accessories, and thus requiring that Defendants return this property to him; and further, enjoining Defendants from taking any action to revoke Aliaj's New Jersey Firearms Purchaser Identification Card ("FPIC").

II. **Factual Background**

Aliaj is a peaceable and law-abiding citizen who does not have any legal, mental, or physical disability that would disqualify him from exercising his fundamental right to keep and bear arms. *See* Declaration of Elsid Aliaj in Support of Motion for a Preliminary Injunction ("Aliaj Decl.") ¶ 6. Until April 2025, Aliaj had possession of firearms, ammunition, and related

accessories that he lawfully owned and still lawfully owns at the present time, referred to in this action as the "Seized Property." *Id*. ¶ 5. On April 17, 2025, Aliaj's wife (hereinafter referred to as "L.A."), pregnant at the time, visited a local clinic to seek treatment for acute discomfort that she believed was a result of her pregnancy. *Id*. ¶ 7. While at the clinic, L.A., who speaks English as a second language, made a statement indicating that her symptoms were causing her serious distress, which clinicians misinterpreted as a suicidal ideation, resulting in their calling Englewood Police Department, which in turn voluntarily admitted L.A. to New Bridge Medical Center. *Id*. ¶¶ 7-8.

Notwithstanding this misunderstanding, later that evening, Englewood Police contacted FLPD headquarters and advised of L.A.'s involuntary admission, and that Englewood Police had conducted a computer search of Aliaj's registered firearms. *Id*. ¶ 10. Shortly thereafter, an FLPD Detective and Police Officer arrived at Aliaj's home, where he resides with L.A. *Id*. ¶ 11. She does not now, and has never, owned any firearms. *Id*. ¶ 12. The FLPD Detective and Officer, without presenting any warrant or other court order, instructed Aliaj to surrender his firearms because of L.A.'s involuntary admission. *Id*. ¶ 13. Although bewildered by this sudden and illegal demand, on pain of arrest, Aliaj had no choice but to cooperate. *Id*. ¶ 14. Accordingly, he surrendered what became the Seized Property. *Id*. Several days later, on April 21, 2025, L.A. was discharged with a diagnosis of "Adjustment disorder with depressed mood" and a note stating "As patient's acute symptoms resolved since admission *she was not presenting acutely anxious depressed suicidal or psychotic she did not meet the criteria for continued inpatient psychiatric hospitalization* and was discharged back to the care of husband . . . ." *Id*. ¶¶ 15-16.

Since Aliaj's firearms and ammunition were improperly confiscated, FLPD, aided by BCPO, has maintained continuous possession of the Seized Property. *Id*. ¶ 18. Aliaj has a large Metallitrend brand gun safe, which has anti-theft technology, and can only be opened using a

passcode, biometric input, or a key. *Id*. ¶ 19. He has not shared the passcode or key to the safe with L.A., and only his biometric input is recognized by the safe. *Id*. ¶ 21. Aliaj intends to immediately lock his firearms in his gun safe upon their return, restricting access to anyone besides himself. *Id*. ¶ 22.

After the fact, Defendants invoked <u>N.J.S.A</u>. 2A:62A-16 (the "Duty to Warn Statute"), to try and justify the confiscation of the Seized Property. Aliaj Decl. ¶ 29. But Defendants have far exceeded the authority afforded to them by the Duty to Warn Statute, which authorizes a "court" to "*order the patient* to surrender to the county prosecutor any firearm owned by or accessible to the patient." (Emphasis added). Furthermore, Aliaj attempted to avail himself of a statutory mechanism to have the Seized Property returned to him by advising BCPO, in writing, that L.A. would have no access to the Seized Property once it was returned. He wrote:

> On the advice of counsel, I formally submit the following statement:
>
> NJ Rev Stat § 2A:62A-16, subsection (e), states in relevant part, "A firearm surrendered or seized pursuant to this subsection which is not legally owned by the patient shall be immediately returned to the legal owner of the firearm if the legal owner submits a written request to the prosecutor attesting that the patient does not have access to the firearm."
>
> I hereby attest that, 1) the firearms I keep in my home will be stored in a locked, metallic, fireproof safe which my wife, [L.A.], cannot access, 2) when locked, the means to enter the safe are under my constant control, and 3) the firearms in question are only removed by me and remain under my control when not locked in the safe.
>
> I hereby request the immediate return of my property as described in the attached report submitted by P.O. Iacovo of the Fort Lee Police Department on April 17, 2025 (Incident #I-2025-021729) to include:
>
> One (1) black Smith & Wesson M&P (Serial Number TW51695), equipped with a Holosun HM3X and Sig Sauer RomeoX
>
> One (1) black Springfield Armory XD (Serial Number: BF432419)
>
> One (1) metallic grey Springfield Armory 9mm, 10-round magazine

3

>Three (3) Magpul 10-round rifle magazine (5.56x45 NATO/.223 Remington)
>
>Two (2) boxes of Hornady Critical Defense 9mm, 115 grain bullets (25-count each)
>
>One (1) box of Winchester 5.56mm M193, 55 grain FMJ (200-count)
>
>Best,
>
>Elsid
>
>Aliaj Decl ¶ 30; Ex. A.

Yet, for several months, relying on the Duty to Warn Statute, BCPO stonewalled Aliaj as he made lawful inquiries about the Seized Property, then, when he objected to turning over L.A.'s medical records and began to assert his rights, ultimately hiring counsel, BCPO commenced a proceeding to revoke Aliaj's FPIC (the "Revocation Proceeding"). *Id*. ¶¶ 23-37. Defendants have further justified their brazen misconduct by claiming that because L.A. purportedly suffers from a mental health condition, Aliaj is no longer entitled to keep and bear arms for the purpose of defending his family. But Defendants never obtained or attempted to obtain from a magistrate an order to seize Aliaj's firearms and ammunition, instead claiming that L.A.'s condition satisfied the "risk" requirement of the Statute.

Plaintiff is fully entitled to possess firearms under applicable federal and state law (*i.e.,* he has no disqualifying felony or other criminal offense, nor has he been "adjudicated as a mental defective" under 18 U.S.C. § 922(g)(4) or any state analogue). Aliaj Decl. ¶ 6. This would be true even if L.A. had a severe mental condition (which she does not), because Defendants may not use her condition to effectively disqualify Aliaj from exercising his fundamental rights, particularly where she would have no access to Aliaj's firearms.

Accordingly, as set forth in more detail below, this Court should grant the requested relief.

III. **Standard of Review**

It is well-settled that a party seeking a preliminary injunction must make a showing that (1) he is likely to succeed on the merits of their claim(s); (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Courts within the District of New Jersey have echoed this test.

As set forth in more detail below, a preliminary injunction is appropriate in the case at bar.

IV. **Argument**

A. **Plaintiff is Likely to Succeed on the Merits of His Claim**

i. *The Proper Analytical Framework*

Incorporated against the states through the Due Process Clause of the Fourteenth Amendment (U.S. CONST. amend. XIV, § 1), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Second Amendment guarantees "an individual right to keep and bear arms," *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). It is "a fundamental constitutional right guaranteed to the people," *id.*, which is and has always been key to "our scheme of ordered liberty." *McDonald*, 561 U.S. at 767-68. "*Heller* . . . demands a test rooted in the Second Amendment's text, as informed by history." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 19 (2022) (citing *Heller*, 554 U.S. 570). Consistent with this demand, and because "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms," *Heller*, 554 U.S. at 582, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 19.

Accordingly, when evaluating Second Amendment claims, courts must first determine whether "the Second Amendment's plain text covers an individual's conduct . . . ." *Bruen*, 597

5

U.S. at 24. If so, "the Constitution presumptively protects that conduct." *Id*. "The government must then justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation." *Id.* In determining whether a regulation is consistent with our Nation's historical tradition, "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 602 U.S. 680, 692 (2024). While a modern regulation "need not be a 'dead ringer' or a 'historical twin'" for regulations at the Founding, the regulation in question must be "analogous enough to pass constitutional muster." *Id.* This involves asking both "why" and "how" a regulation burdens an individual's Second Amendment rights. *Id*. "[I]f laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons" are permissible. *Id.* However, the law may fail to pass constitutional muster if it regulates arms-bearing "to an extent beyond what was done at the founding." *Id.*

      ii.    <u>*Defendants' Conduct Blatantly Violates Heller's Command Against Firearm Bans in the Home*</u>

Here, as a threshold matter, Defendants are unquestionably governmental actors and entities, all subject to the Second Amendment. Therefore, since Defendants are subject to the Second Amendment, the only other question is whether their conduct *violated* the Second Amendment. Applying the historical and textual test that *Heller* and *Bruen* require, the answer to this question is undoubtedly yes. Plaintiff's right to keep and bear arms was infringed when Defendants unlawfully seized his constitutionally protected firearms and ammunition, refused to return the Seized Property pursuant to New Jersey statutory requirements, and then proceeded to extend what should have been at most temporary constitutional infringement into a potentially permanent one by instigating the retaliatory Revocation Proceeding.

As a result, Aliaj has been completely barred from exercising his fundamental right to keep and bear arms, including handguns, in his "*home*, where the need for defense of self, family, and property is *most acute*." *Heller*, 554 U.S. at 628 (emphases added). The Revocation Proceeding will only turn the *ultra vires* acts of Defendants, undertaken without any court order, into a permanent loss of rights.

This is not a close case. Rather, Defendants have blatantly thumbed their nose at the clear precedent of the Supreme Court of the United States and will continue to do so absent court intervention. A governmental entity simply may not prevent a peaceable, law-abiding individual from possessing handguns and other firearms in the home, *full stop*. *See Heller*, 554 U.S. at 576, 635-636 (holding that the District of Columbia's "total ban on handguns, as well as its requirement that firearms in the *home* be kept nonfunctional even when necessary for self-defense" violated the Second Amendment) (emphasis added); *Id*. at 627 ("As we have said, the law totally bans handgun possession in the *home*.") (emphasis added). Indeed, the Second Amendment "takes certain policy choices off the table [including] the absolute prohibition of *handguns* held and used for self-defense in the home." *Heller*, 554 U.S. at 636. (Emphasis added). As Defendants should know, "the American people have considered the handgun to be the quintessential self-defense weapon" and "handguns are the most popular weapon chosen by Americans for self-defense in the home." *Id*. at 629. Among Aliaj's Seized Property were two handguns.

The State of New Jersey can't bar Aliaj from safely possessing handguns and other firearms in his home and neither can Defendants, regardless of the purported mental condition of family members and cohabitants. When it comes to the home, banning peaceable, law-abiding citizens such as Aliaj from possessing firearms in this sacrosanct location is a policy choice that is "off the table." It is beyond cavil that there is *no* historical tradition of prohibiting peaceable, law-abiding

7

citizens such as Aliaj from possessing firearms in their homes. Therefore, Defendants cannot make an affirmative showing that any of their unlawful acts regarding Aliaj's firearms are part of any historical tradition of firearms regulation.

> iii. *There is no Historical Regulation or Case Law that Supports Wholesale Disarmament of a Peaceable and Law-Abiding Firearms Owner Who Resides With Another Individual That Has an Actual or Perceived Mental Health Condition Where the Other Individual Cannot Exercise Control Over the Owner's Firearms*

There are no historical analogues that support Defendants' practice of disarming a peaceable and law-abiding firearms owner based on the actual or perceived mental health condition of another individual who resides with that owner. There is no question that *Plaintiff* is not disqualified from keeping and bearing arms under either state or federal law. Although "there is no word more ambiguous in its meaning than possession," *Nat'l Safe Deposit Co. v. Stead*, 232 U.S. 58, 67 (1914), courts in this Circuit have concluded that in criminal matters, constructive possession of a firearm requires that a person (1) knows of the gun and (2) has both the power and intent to exercise dominion over it, *U.S. v. Bellinger*, 284 Fed. App'x 966, 968–69 (3d. Cir. 2008) (citing *U.S. v. Iafelice*, 978 F.2d 92, 96 (3d Cir. 1992)). Courts and juries consider several factors in this analysis, including proximity to the firearm, connection with the firearm, proof of motive, evasive conduct, or a gesture implying control over the firearm. *Id.,* (citing *U.S. v. Jenkins*, 90 F.3d 814,818 (3d Cir. 1996); *U.S. v. Booker*, 436 F.3d 238,242 (D.C. Cir. 2006) (additional citations omitted)); *see also Bellinger*, 284 Fed. App'x at 969 ("While proximity to the gun is a substantial consideration in this analysis, proximity alone is insufficient.") (internal citation omitted).

"A weapon is under one's control . . . if it is in an area from which he might gain immediate possession." *United States v. Xavier*, 2 F.3d 1281, 1289 (3d Cir. 1993)). Even legislators and scholars who favor stricter gun control laws recognize that a firearms owner can prevent constructive possession by storing guns in a way that denies access to any prohibited person. *See,*

8

*e.g.*, Patrick D. Murphree, Comment, *"Beat Your Wife, and Lose Your Gun": Defending Louisiana's Attempts To Disarm Domestic Abusers*, 61 LOY. L. REV. 753, 786 (2015) ("[I]f a firearm were stored in a manner such that the abuser could not access it—such as in a safe to which the abuser did not know the combination . . . a court should deem the abuser not to have constructive possession of the firearm."); CAL. PENAL CODE § 25135 (2020) (Providing that a firearm-owning cohabitant "who knows or has reason to know" that they are living with a person prohibited by state or federal law from possessing a gun must lock or otherwise disable the firearm when they are not carrying it themselves.); N.Y. PENAL LAW § 265.45 (similar requirement).

In short, the dispositive inquiry when determining possession is *access*, *not address*. Assuming *arguendo* that Plaintiff's spouse, L.A., is legally disqualified from owning or possessing a firearm (a point which Plaintiff does not concede), Plaintiff's Second Amendment rights should not have been stripped away in their entirety. Instead, as a lawful, responsible owner of firearms, Plaintiff should be allowed to regain possession and control over the Seized Property and take appropriate measures to restrict his wife from unauthorized access. The Third Circuit has recognized this crucial distinction between lawful possession by a cohabitant of a firearm and facilitation of a disqualified cohabitant's possession of said firearm, noting in *U.S. v Huet* that the defendant's "right to keep the SKS rifle in her home did not give her the right to facilitate [her disqualified cohabitant's] *possession* of the weapon." 665 F.3d 588, 602 (3d Cir. 2011), *cert. denied* 568 U.S. 941 (2012) (emphasis added).

Pointedly, possession does not mean merely living at an address where firearms are kept. "The government can prove possession of a firearm for purposes of §922(g)(1) in two ways: (1) by showing that the defendant exercised direct physical control over the weapon (actual possession), or (2) by showing that he exercised dominion or control over the area in which the weapon was

9

found (constructive possession)." *United States v. Caldwell*, 760 F.3d 267, 278 (3d Cir. 2014). This analysis underscores the *Huet* Court's having made a point of noting "the risk that felon dispossession statutes, when combined with laws regarding accomplice liability, may be *misused* to subject law-abiding cohabitants to liability simply for possessing a weapon in the home." *Id.* at 601 (emphasis added). Where a disqualified individual has no access to a cohabitant's firearms, there is no basis for invoking laws that are aimed squarely at keeping firearms out of the hands of the disqualified individual.

      iv.      *Defendants Did Not Follow State Law*

Plaintiff's likelihood of success is even more clearcut because it is apparent that Defendants did not follow proper state law procedure before trying to confiscate Plaintiff's firearms pursuant to N.J.S.A. 2A:62A-16, the Duty to Warn Statute. Aliaj Decl. ¶ 29. This is for two reasons: first, because the Statute only applies to *patients*, not to their family members or co-habitants (such as Aliaj), and second, because the Statute requires a court order before authorities can act.

Under this statute, health care professionals have a "duty to warn and protect" where a patient has communicated "a threat of imminent, serious physical violence against a readily identifiable individual or against himself" or where the practitioner believes that "the patient intended to carry out an act of imminent, serious physical violence against a readily identifiable individual or against himself." N.J.S.A. 2A:62A-16.1.b(1), (2). Practitioners are also required, where applicable, to notify law enforcement of such imminent danger, including the identity of the patient. In addition, the patient can be compelled to surrender his or her firearms, under the following circumstances:

> If *the patient* has been issued a firearms purchaser identification card, permit to purchase a handgun, or any other permit or license authorizing possession of a firearm, or if there is information indicating that *the patient* otherwise may have access to a firearm, the information provided may be used in determining whether

10

> *the patient* has become subject to any of the disabilities set forth in subsection c. of N.J.S.2C:58-3. If the chief law enforcement officer or superintendent, as appropriate, determines that *the patient* has become subject to any of the disabilities set forth in subsection c. of N.J.S.2C:58-3, any identification card or permit issued to the patient shall be void and subject to revocation by the Superior Court in accordance with the procedure established in subsection f. of N.J.S.2C:58-3.
>
> N.J.S.A. 2A:62A-16.1. e. (Emphasis added).

Thus, with respect to seizure of firearms, the Duty to Warn Statute only applies to the *patient* who is the subject of the report, and *not* to family members or co-habitants. Since Aliaj was not the subject of any "Duty to Warn" report, he was not legally subject to seizure of his firearms, ammunition, and related accessories—the Seized Property. The Duty to Warn Statute only permits specified members of law enforcement to cause "any identification card or permit issued *to the patient* [to] be void." *Id.* 2A:62A-16.1.e (emphasis added).

Moreover, the statute is clear that only "*the court* may order the *patient* to surrender to the county prosecutor any firearm owned by or accessible to the patient and order the prosecutor to dispose of the firearms." *Id.* (emphasis added). Thus, even *arguendo* if Defendants could have applied the Duty to Warn Statute to Aliaj, Defendants were required to procure a court order prior to confiscating any firearms which were accessible by Plaintiff's wife. This they did not do. Notwithstanding that the statute would be unconstitutional as applied to Plaintiff if it permitted the seizure of his firearms as a cohabitant of a disqualified person without access to his firearms, Defendants did not even properly follow the procedure they claimed to follow and were required to follow.

But Defendants' violation of New Jersey state law was not limited to their actions in confiscating the Seized Property. Pursuant to N.J.S.A. 2A:62A-16.1.e., "[a] firearm surrendered or seized pursuant to this subsection which is not legally owned by the patient *shall be immediately returned to the legal owner* of the firearm if the legal owner submits a written request to the

11

prosecutor attesting that the patient does not have access to the firearm." (Emphasis added). Aliaj submitted just such a written request, explaining with specificity how his firearms were to be secured in such a way that L.A. could not access them. Aliaj Decl ¶ 30; Ex. A. Thus, notwithstanding that the initial confiscation of the Seized Property was illegal, Defendants have also failed to follow the law which would mandate the return of the Seized Property had it been properly confiscated in the first place.

In summary, Defendants, in violation of the state law they sought to enforce, unconstitutionally deprived Plaintiff of the Seized Property because a cohabitant of his was allegedly the subject of the Duty to Warn Statute, and they continue to deprive him of the Seized Property even though he has made a written request for its return, as contemplated by statute, informing them that L.A. will not have access to the Seized Property because he will secure all of it immediately upon its return. Under these circumstances, Plaintiff is extremely likely to succeed on his Second Amendment claim.

### B. Plaintiff Will Suffer Irreparable Harm

Plaintiff will suffer irreparable harm absent injunctive relief because the deprivation implicates a fundamental constitutional right. The deprivation of a constitutional right, even for minimal periods of time, unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Thus, when alleged deprivation of a constitutional right is involved, "most courts hold that no further showing of irreparable injury is necessary." 11A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. 2022).

The Second Amendment protects the right to be "armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 554 U.S. at 584. Because this is a right "for self defense," it is "a right that can be infringed upon whether or not plaintiffs are

ever actually called upon to use their weapons to defend themselves." *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 150 (D.D.C. 2016), *granting permanent injunctive relief, sub. nom. Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017). "When one needs to defend herself, family, or property right now, but is defenseless," that "is the heaviest kind of irreparable harm." *Rhode v. Becerra*, 445 F. Supp. 3d 902, 954 (S.D. Cal. 2020), *vacated and remanded Rhode v. Bonta*, No. 20-55437, 2022 WL 17099119 (9th Cir. 2022).

In one instance in this District, the court accepted that legislation prohibiting plaintiffs from exercising their right to carry in certain places they had previously been able to, constituted irreparable harm which supported the issuance of a preliminary injunction. *Koons v. Reynolds*, 649 F. Supp. 3d 14 (D.N.J. 2023) ("Plaintiffs can no longer exercise this right by carrying their firearms at locations they were accustomed to visiting in their day-to-day lives and in ways law-abiding gun owners routinely do. . . . Accordingly, Plaintiffs have satisfied the irreparable injury prong justifying injunctive relief.").

Here, Plaintiff's inability to keep and bear arms throughout the remainder of this litigation would mean his loss is "immediate and irreparable." Unless this Court grants an injunction, Plaintiff will certainly continue to suffer irreparable violation of his constitutional right to keep and bear arms. Where Defendants' brazen overreach has rendered Plaintiff and his household defenseless against potential armed intruders or other threats to their personal safety for every minute that Plaintiff is disarmed, these harms cannot be fully remedied absent injunctive relief.

### C. The Remaining Factors Favor Granting a Preliminary Injunction

When the government is the party opposing a preliminary injunction, harm to the opposing party and the public interest merge into a single inquiry. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The duties of the federal court sometimes include "correcting a state that goes beyond the U.S.

Constitution's bounds." *Delaware State Sportsmen's Assoc. et al. v. Delaware Dept. of Safety & Homeland Sec.*, No. 23-1633 (3d Cir. 2024) at *25.

Here, granting the injunction imposes minimal burden on Defendants. This is not a case in which an injunction will prevent a state from enforcing its own duly enacted laws or exercising its police power. At most, Defendants will be prevented from conduct that exceeds both the letter of state law and constitutional bounds.

It follows, then that public safety interests favor issuing an injunction. The statutes effectuated by the people of New Jersey do not authorize this enforcement, rather they affirm that the public interest favors denying firearms only to legally disqualified individuals, not from anyone who may enter or live in their household. Left unremedied, Defendants' removal of firearms based solely on the fact that Plaintiff's wife may have suffered a temporary mental health episode would open the floodgates to confiscation of firearms from law-abiding firearms owners who have committed no wrong meriting such confiscation. And so, this Court should act to enjoin Defendants' unchecked infringement of Plaintiff's constitutional rights.

### V. Conclusion

This Court should grant Plaintiff's motion for a preliminary injunction.

November 3, 2025

Respectfully Submitted,

*/s/ Edward Andrew Paltzik*
Edward A. Paltzik (Bar No. 251582017)
**Taylor Dykema, PLLC**
914 E 25th Street
Houston, TX 77009
edward@taylordykema.com
516-526-0341

*Counsel for Plaintiff Elsid Aliaj*