Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Elsid Aliaj,** <br><br> **Plaintiff,** <br><br> v. <br><br> **Fort Lee Police Department,** *et al.* <br><br> **Defendants.** | Civil Action No. 25-17131 (ES) (MAH) <br><br> **ORDER** |

**SALAS, DISTRICT JUDGE**

Before the Court is plaintiff Elsid Aliaj's ("Plaintiff") motion for preliminary injunction. (D.E. No. 3 ("Motion" or "Mot."); D.E. No. 3-1 ("Moving Brief" or "Mov. Br.")). It appearing:

1. On November 3, 2025, Plaintiff filed a complaint (D.E. No. 1 ("Complaint" or "Compl.") against defendants Fort Lee Police Department ("FLPD"), Chief Matthew Hintze, Bergen County Prosecutor's Office ("BCPO"), and Mark Musella (together, "Defendants"). Therein, Plaintiff alleged that "[o]n April 17, 2025, FLPD—based on a report from the Englewood Police Department . . . that Aliaj's wife . . . had been involuntarily admitted to New Bridge Medical Center for a mental health evaluation (in what turned out to be a language-related misunderstanding, resulting in [her] discharge with a diagnosis of 'Adjustment disorder with depressed mood Seven weeks pregnant')—confiscated Aliaj's firearms, ammunition, and related accessories from his home." (Compl. ¶ 3). Plaintiff claimed that "on September 12, 2025, BCPO commenced a proceeding to revoke Aliaj's Firearms Purchaser Identification Card . . . with the intention of converting the confiscation and deprivation of his property into a permanent loss of

Second Amendment rights." (*Id*. ¶ 5).

2. To date, Plaintiff has not served the Complaint on Defendants. (*See* No. 25-17131). Accordingly, none of the Defendants have yet appeared or answered Plaintiff's Complaint. (*Id*.).

3. On November 3, 2025, Plaintiff filed a motion for preliminary injunction. (*See generally* Mot.). Plaintiff requests the following preliminary injunctive relief: "an order of this Court enjoining Defendants from destroying, selling, transferring, or otherwise disposing of Aliaj's firearms, ammunition, and related accessories; enjoining Defendants from continuing and maintaining their unlawful seizure and ongoing illegal deprivation of Aliaj's firearms, ammunition, and related accessories, and thus requiring that Defendants return this property to him; and further, enjoining Defendants from taking any action to revoke Aliaj's New Jersey Firearms Purchaser Identification Card." (Mov. Br. at 1). Plaintiff argues that he "will suffer irreparable harm absent injunctive relief because the deprivation implicates a fundamental constitutional right." (*Id*. at 12). He contends that his "inability to keep and bear arms throughout the remainder of this litigation would mean his loss is 'immediate and irreparable[,]'" because "Defendants' brazen overreach has rendered Plaintiff and his household defenseless against potential armed intruders or other threats to their personal safety for every minute that Plaintiff is disarmed." (*Id*. at 13).

4. Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions. "If there is a possibility that irreparable injury will occur before the hearing on a preliminary injunction required by Rule 65(a) can be held, a temporary restraining order may be available under Rule 65(b)." *Int'l Foodsource, LLC v. Grower Direct Nut Co*., No. 16-3140, 2016 WL 4150748, at *6 (D.N.J. Aug. 3, 2016). Such "[i]njunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *See Westchester Fire*

*Ins. Co. v. Glob. Constr., LLC*, No. 09-0207, 2009 WL 137414, at *1 (D.N.J. Jan. 20, 2009) (quoting *Kos Pharm. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)).

5. It is unclear whether Plaintiff seeks injunctive relief on an emergency, *ex parte* basis. Indeed, while Plaintiff filed this application prior to serving the Summons and Complaint on Defendants, he seeks a preliminary injunction rather than a temporary restraining order. (*See generally* Mov. Br. (styling the Motion as "Plaintiff Elsid Aliaj's Memorandum of Law in Support of Motion for a Preliminary Injunction"); *see also* D.E. No. 3-4 (proposing an order which grants the injunctive relief in question, without setting dates for Defendants' response or other proceedings)). Taken together, these facts support the Court's conclusion that there is no need for emergent, *ex parte* relief at this time. Furthermore, this matter would benefit from full briefing by the parties involved.

Accordingly, IT IS on this 5th day of November 2025,

**ORDERED** that the Court will consider Plaintiff's Motion, in the ordinary course, after Plaintiff provides Defendant with notice of both the Complaint and the Motion and an opportunity to respond; and it is further

**ORDERED** that Plaintiff shall serve Defendant with the Summons, Complaint, Motion, and this Order **on or before November 21, 2025**. Plaintiff's counsel shall thereafter file a certification reflecting that service; and it is further

**ORDERED** that, after Plaintiff effectuates service as described herein, the parties shall meet and confer regarding: (i) whether any expedited discovery is necessary for the Court to resolve Plaintiff's application; (ii) a schedule for any such discovery; and (iii) a briefing schedule for the Motion; and it is further

**ORDERED** that the parties shall file a joint status letter addressing the foregoing on or

before **December 5, 2025**.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**